EDWARD B. BLAISDELL *vs.* THE INHABITANTS OF YORK.

York.    Opinion October 10, 1918.

*Cities and towns.  Scope of authority of Committees appointed by cities or towns.
General rule governing the question of the liabilities of cities and towns.*

In an action of assumpsit to recover $1394.71 for plans and specifications for new
bridge and way across York River, alleged to have been prepared and furnished
by him as an "architect" to the Special Committee appointed by the town to
construct the bridge, it is

*Held:*

1.    That the Special Committee elected another party as Engineer in connection
with the work.
2.    That the plaintiff was the contractor in building the bridge and any pre-
liminary plans or specifications prepared by him were prepared at his own
instance and in his own interest in order to secure the contract, and not at the
charge and expense of the town.
3.    That the Special Committee were dismissed by the town on March 11, 1907,
and after that date the Committee had no power to secure plans or specifica-
tions from the plaintiff at the expense of the town, even if any were in fact
supplied.

Action on the case to recover for services claimed to have been
rendered defendant town.   Defendant filed plea of general issue and
also brief statement.   By agreement case was reported to Law Court
upon certain stipulations and agreements.   Judgment in accordance
with opinion.

Case stated in opinion.

*Cleaves, Waterhouse & Emery, and John C. Stewart,* for plaintiff.
*E. P. Spinney, and James O. Bradbury,* for defendant.

SITTING:  CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN,
MORRILL, JJ.

CORNISH, C. J.   This is an action of assumpsit brought upon the
following account annexed:

"York Village, Maine, Jan. 11, 1907.

TOWN OF YORK,

    To E. B. BLAISDELL, Architect,

To plan and specifications for new bridge and way across
    York River,                                        1394.71."

The case is before the Law Court on report. It is an echo of the
somewhat famous York bridge litigation which has been before this
court at various times and in various forms. *Bliss* v. *Junkins*, 106
Maine, 128; *Same.* v. *Same*, 107 Maine, 425; *Blaisdell* v. *York*, 110
Maine, 500; *York* v. *Stewart*, 110 Maine, 523; *Bliss* v. *Blaisdell*, 110
Maine, 527; *Blaisdell* v. *York*, 115 Maine, 351.

A detailed history of the facts connected with the litigation may be
found in *Blaisdell* v. *York*, 110 Maine, 500. It is sufficient for the
purposes of the present case to state, that a special town meeting of
the inhabitants of York was held on October 13, 1906, "to see if the
town will vote to build the bridge and approaches as laid out by the
County Commissioners across York River at York Harbor." The
proposition was carried by a vote of 174 in favor to 123 opposed. At
the same meeting "On motion of Mr. Gifford, a committee of four was
chosen to act in conjunction with the selectmen in building the bridge,
said Committee as suggested by Mr. Gifford, to consist of Charles H.
Young, Joseph W. Simpson, Charles E. Weare and J. Perley Putnam,
said Committee to serve without pay." Trouble arose between the
three selectmen on the one side and the committee of four on the
other as to their respective powers and duties, and on October 22,
1906, the selectmen informed the other members that they would no
longer act with them and withdrew from all further participation in
the matter. The committee of four however continued to serve.
On December 5, 1906, a written contract in the sum of $39,500 for
the building of the bridge was entered into between the plaintiff and
the town of York, signed in behalf of the town by the four members of
the committee only. The selectmen sent various communications to
the committee and to the contractor, protesting against the carrying
out of the contract, denying its validity and all liability on the part
of the town in connection therewith.

At the annual town meeting held on March 11, 1907, one article
in the warrant read "to see what action the town will take relative to

the committee of four appointed at a town meeting held October 13, 1906, in connection with the proposed construction of said bridge." Upon this it was voted, "that the Committee be dismissed from further service." Neither the four members nor the contractor paid any attention to the protests of the selectmen nor to this vote of dismissal. On October 17, 1907, a supplemental contract was entered into between the plaintiff and the committee, making a net increase of $6,990.43 in the cost of the bridge, due to certain changes required by the War Department. The work progressed and the bridge was completed in May, 1908, but was not accepted by the town.

The plaintiff subsequently brought suit against the town for the balance alleged to be due him under the contract of December 5, 1906, and the supplemental contract of October 17, 1907, together with certain payments made by him to A. W. Gowen the engineer in charge. This court held the town liable under the original contract, but not under the supplemental contract, nor for the payments voluntarily made by the plaintiff to the engineer. That decision was announced July 1, 1913. *Blaisdell* v. *York*, 110 Maine, 500.

The plaintiff then brought another action of assumpsit to recover the amount claimed under the second contract, and judgment was ordered for the defendants November 2, 1916, on the ground that the claim was res judicata. *Blaisdell* v. *York*, 115 Maine, 351.

The present suit was begun on November 13, 1912, and embraces a charge not contained in either of the other suits, namely, for plans and specifications, which the plaintiff claims were prepared and furnished by him as an "architect" to the committee, some of the plans and specifications at their request shortly after their appointment, for use by them in securing proposals and bids for the construction of the work, and the remaining plans and specifications prepared by him for the committee later on to conform to the changes as required by the War Department. This divides the claim into two branches, the plans and specifications at the inception of the work, and those prepared to meet the changes by the War Department. We will consider these branches separately.

It is obvious, as a matter of law, that under the appointing vote of October 13, 1906, the bridge committee were both authorized and instructed to build the bridge. As was said in the opinion in the former suit, "They were to take the necessary steps to carry out the vote of the town and obey instructions by building the way and the

bridge. It was their duty to select an engineer, obtain plans and specifications, advertise for bids, make the award and execute a contract." *Blaisdell* v. *York*, 110 Maine, 500, 518. And this is what the committee proceeded to do; but Mr. Blaisdell was not the man selected as engineer, nor to make the plans and specifications. His name is not mentioned in that connection. The records of the meeting of the committee held on October 25, 1906, which was the first meeting held after the controversy with the selectmen had resulted in their withdrawal, and only three days after that event, contain the following vote: "The committee voted to engage Mr. R. W. Libby of Saco, Maine, to take levels, prepare specifications and make changes in the plans according to the ideas of the Committee." What is meant by the term "plans" is explained by the action taken at the next meeting held on October 30, 1906, viz: "It was reported by the secretary of the committee that Mr. R. W. Libby declined to act as engineer for the Committee."

"Voted to engage A. W. Gowen to take levels, change plans and take charge of the construction of the bridge."

"Voted, to adopt the plans, with some changes, that were offered for inspection at the special town meeting of October 13, 1906."

This leaves no room for doubt or discussion as to the plans which the engineer, Mr. Gowen, was to modify. They were the plans offered for inspection at the special town meeting called for the purpose of ascertaining whether the town would or would not build the bridge. Those plans had been made by Mr. Blaisdell in anticipation of that meeting, and were exhibited by him there as sketches of his idea of how the bridge and approaches should be constructed. His purpose is evident. He wished to obtain the contract for the construction, and the first step was to convince a majority of the voters as to the wisdom and practicability of the work. This is often done, but it is hardly to be expected that the town is to pay therefor. The plan or sketch which is before the court bears out this conclusion. It was Mr. Blaisdell's plan, not the town's. It was prepared at his own instance for his own use at the town meeting, not at the instigation of the town, nor its committee, for the committee had not been appointed when the plan was made. It served its purpose, a favorable vote was secured, and the committee under that vote selected their own engineer who was instructed to take levels and change plans and take charge of construction, and he continued in service until the work was completed.

On November 5, 1906, the committee voted to prepare proposals and advertise for bids. The plaintiff was one of the bidders, and to him the contract was awarded for $39,500 on November 30, 1906. It would be strange indeed if the same person should be both the engineer or "architect" to act for the committee, and the bidder to secure the contract. It is evident that no such incongruity existed here. The plaintiff is not entitled to compensation for the preliminary plans.

As to any plans made by the plaintiff to meet the requirements of the War Department calling for certain changes in the work, another point in defense arises, in addition to what has been said above. The four members of the Committee were dismissed by vote of the town on March 11, 1907. Their authority then ceased and all acts on their part after that date were unauthorized and void. *Blaisdell* v. *York*, 110 Maine, 500, 520. The changes were directed by the War Department after that date and the committee had then no power to employ the plaintiff to make plans and specifications at the expense of the town even if they had desired to do so. But it is difficult to conceive why they should have employed him for that purpose. The committee already had selected its own engineer, Mr. Gowen, who was still in service, and the interests of the plaintiff as the contractor were really adverse to those of the committee, in case of any controversy. The true situation is revealed by the vote of the committee passed October 17, 1907, viz: "The changes ordered by the War Department were further discussed and the extra work and cost thereby entailed as given by the engineer and the contractor were considered. In view of the reduction made in the figures heretofore given it was voted to proceed under the fifth and sixth articles of the contract of December 5, 1906, to instruct the engineer, A. W. Gowen, to require the contractor to make the changes made necessary by order of the War Department, said changes and the agreed price therefor being as hereinafter set forth in an order executed of which the following is a copy." Evidently Mr. Gowen was the engineer who was preparing all necessary plans and specifications and who was representing the committee in dealing with Mr. Blaisdell the contractor. Mr. Blaisdell was not acting in the double and absurd capacity of contractor and "architect."

It should be further observed that prior to the institution of the suit at bar the plaintiff has at different times brought three suits

against the town of York to recover for services rendered and in none of them has he included any charge for plans and specifications. The first suit was brought to recover the amount due under his contract, and in that case he took a voluntary nonsuit. A second writ was brought for the same cause and included certain sums alleged to have been paid by the contractor to the engineer, Mr. Gowen. That suit recognized Mr. Gowen as the engineer in charge. These sums were disallowed as were also his claims under the second or supplemental contract, and judgment was entered in his favor for the amount found due, with interest, under the first contract, $44,536.99. Another suit was then begun to recover the amount claimed under the second contract, and in this judgment was rendered for the defendant.

Now for the first time is the claim made for services in preparing plans and specifications. We cannot resist the conclusion that in view of all the facts and circumstances, and the prior conduct of this plaintiff, this claim is in the nature of an after-thought. It lacks merit, and is not substantiated by convincing proof.

*Judgment for defendants.*